**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| TRANSTAR INDUSTRIES, INC. | : | Case No. 1:16-cv-1728 |
| 7350 Young Drive | : | |
| Walton Hills, Ohio 44146, | : | |
| | : | Judge |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DONALD YOUNGKER | : | **COMPLAINT FOR DAMAGES** |
| 4248 East Robert E. Lee St. | : | **AND INJUNCTIVE RELIEF** |
| Phoenix, Arizona 85032, | : | **WITH JURY DEMAND** |
| | : | |
| and | : | |
| | : | |
| WHATEVER IT TAKES TRANSMISSIONS | : | |
| 4282 E. Blue Lick Rd. | : | |
| Louisville, Kentucky 40229, | : | |
| | : | |
| Defendants. | : | |

Plaintiff Transtar Industries, Inc. ("Transtar" or "Plaintiff"), for its Complaint For Damages and Injunctive Relief With Jury Demand (the "Complaint") against Defendants Donald Youngker ("Youngker") and Whatever It Takes Transmissions ("WIT") (Youngker and WIT are, collectively, "Defendants"), states as follows:

**PARTIES**

1. Transtar is a corporation organized under the laws of the State of Ohio with its principal place of business in the State of Ohio and transacting business throughout the State of Ohio and nationally.

2. Youngker is an individual citizen of the State of Arizona.

1

3. WIT is a corporation organized under the laws of the State of Kentucky with its principal place of business in the State of Kentucky and transacting business throughout the States of Kentucky, Ohio and nationally.

4. WIT and Transtar are competitors.

## VENUE AND JURISDICTION

5. This Court has personal jurisdiction over Youngker by virtue of his continuous contact with Transtar's headquarters located in Ohio throughout his employment with Transtar. Youngker's continuous contact with Transtar's Ohio headquarters included daily communications pertaining to sales, warranties, pricing, orders, and other information; his receipt of paychecks issued from Ohio; and his processing of expenses, which occurred in Ohio. This Court has previously held that Transtar's sales representatives can be sued in Ohio for trade secret violations due to the sales representatives' continuous contacts with Transtar's headquarters located in Ohio.

6. This Court has jurisdiction over this matter pursuant to its diversity jurisdiction as set forth in 28 U.S.C. § 1332 because this matter is between citizens of different states and the amount in controversy exceeds $75,000 exclusive of costs and interest.

7. Venue is proper because a substantial part of the events giving rise to the claims occurred in this district and a substantial part of the property that is the subject to the claims in this action is situated in this district.

## FACTS COMMON TO ALL CLAIMS

8. Transtar is in the business of distributing transmission-related products, automotive specialty repair and refinishing products, and high performance parts and accessories.

9. WIT is in the same business as Transtar.

10. Youngker is a former employee of Transtar. Youngker's last day at work for Transtar was August 26, 2015; however, Youngker did not submit a resignation and continued to be paid by Transtar through August 31, 2015.

11. Youngker's last position with Transtar was a sales representative, reporting to a Transtar branch in Phoenix, Arizona.

12. Transtar maintains valuable and confidential information relating to its pricing, products, stocking and inventory, customers, customer credit terms, customer orders, delivery routes, information pertaining to the distribution and automotive business, and other business information.

13. Transtar's valuable and confidential information is not readily ascertainable by others. Transtar takes all reasonable efforts to maintain the secrecy of its valuable and confidential information.

14. In a deposition in another matter, Youngker admitted that Transtar kept its valuable information confidential from its competitors.

15. Transtar's valuable and confidential information has independent economic value to Transtar by nature of the information being known only to Transtar.

16. In a deposition for another matter, Youngker admitted that Transtar's confidential information is valuable to Transtar and would be valuable to a Transtar competitor.

17. Transtar maintains a Code of Business Conduct, Responsibility and Ethics, under which its employees are required to maintain a duty of loyalty toward Transtar, including by not using Transtar property and information for personal gain, not competing with Transtar, and not

taking opportunities personally that are discovered through use of Transtar property or information.

18. Transtar maintains a Confidentiality Policy, which provides that Transtar's confidential information includes, but is not limited to, its customer information, pricing information, product information, data compilations, and business reporting documents.

19. Transtar's Confidentiality policy prohibits employees, during or after their employment with Transtar, from disclosing Transtar's confidential information to third parties or using Transtar's confidential information for their own or others' benefit.

20. Transtar also maintains other policies that prohibit any employee, including Youngker, from using Transtar's valuable and confidential information for purposes other than for official Transtar business.

21. Transtar maintains Terms and Conditions with its customers that require Transtar's customers to keep Transtar's information, including pricing information, confidential.

22. Transtar's product pricing is not publicly available.

23. Youngker became one of Transtar's top sales employees and, pursuant to a duty to keep Transtar's information confidential, became aware of Transtar's valuable and confidential information as to pricing, products, customers, customer credit terms, customer orders, delivery routes, and other business information, which were to be used for Transtar business purposes only.

24. On August 26, 2015, while still a Transtar employee, Youngker walked out of work at Transtar's Phoenix branch claiming that he had a dentist appointment; Youngker never returned to work thereafter. Youngker eventually separated from Transtar on August 31, 2015. Youngker provided no notice of his separation.

25. Youngker began employment with WIT while still being paid by Transtar. In fact, Youngker solicited Transtar customers, on behalf of WIT, while still employed by Transtar.

26. Prior to Youngker's separation from Transtar, WIT did not have operations in the Phoenix area.

27. In a deposition for another matter, Youngker admitted that, while still employed by Transtar, he was part of WIT's efforts to take Transtar's employees and confidential information to start operations and sales in the Phoenix area and beyond.

28. Youngker's former supervisor at Transtar, who also left Transtar for WIT, also provided deposition testimony confirming that, without Transtar's knowledge or authorization, Youngker provided Transtar's confidential information to WIT to aid in WIT's operations.

29. Youngker's former supervisor testified that, without Transtar's knowledge or authorization, he and Youngker used Transtar's confidential pricing information to set WIT's pricing at its Phoenix branch at or below Transtar's prices.

30. Youngker's former supervisor testified that, without Transtar's knowledge or authorization, he and Youngker used Transtar's confidential information to set WIT's inventory and stocking list and levels for its Phoenix branch.

31. Youngker's former supervisor testified that, without Transtar's knowledge or authorization, he and Youngker used additional Transtar confidential information to set up and operate WIT's Phoenix branch.

32. In a deposition for another matter, Youngker admitted to engaging in ongoing discussions with WIT executives and other personnel about joining WIT beginning in March 2015, up and until his separation with Transtar on August 31, 2016.

33. Youngker was one of at least three former Transtar employees based out of the Phoenix area that left Transtar for WIT to begin WIT's operations in the Phoenix area.

34. In a deposition for another matter, Youngker admitted that, while still employed by Transtar, he engaged in the unauthorized acquisition, disclosure, and use of Transtar's valuable and confidential information for WIT, including Transtar's customer list, customer credit terms, customer orders, pricing information, inventory information and delivery information.

35. In a deposition for another matter, Youngker admitted that, while still employed by Transtar, he exchanged emails with WIT that included confidential Transtar information including Transtar's customer list, customer credit terms, customer orders, pricing information, inventory information and delivery information., in an effort to prepare WIT's Phoenix branch to compete with Transtar.

36. In a deposition for another matter, Youngker admitted that, while still employed by Transtar, he used confidential Transtar information, including Transtar's customer list, customer credit terms, customer orders, pricing information, inventory information and delivery information., to solicit and divert Transtar's customers away from Transtar and towards WIT.

37. In a deposition for another matter, Youngker admitted that he continued to engage in the unauthorized use of Transtar's valuable and confidential information following his separation from Transtar by contacting Transtar customers and using the information to take the customers' business away from Transtar and transfer the business to WIT.

38. In a deposition for another matter, Youngker admitted that he and WIT were aware of Transtar's potential claims against Youngker and WIT, and WIT agreed to defend him against any lawsuit brought against him by Transtar.

39. In a deposition for another matter, Youngker admitted that Transtar has been damaged by his misappropriation of Transtar's confidential information to benefit WIT.

40. Youngker distributed Transtar's valuable and confidential information to WIT for the benefit of Youngker and WIT.

41. WIT has used Transtar's valuable and confidential information to take customer business away from Transtar.

42. In a deposition for another Matter, Youngker admitted that the majority of the customers he had while at Transtar followed him to WIT.

43. Transtar has been damaged and lost customers and business due to Youngker's and WIT's unauthorized and improper actions.

44. WIT learned of Youngker's admissions yet it elected not to discipline Youngker for his misconduct.

45. WIT was aware of Youngker's disclosure of Transtar's confidential business information while Youngker was still employed by Transtar.

46. WIT authorized Youngker's misconduct.

47. WIT has greatly benefited due to Youngker's misconduct.

**COUNT I – MISAPPROPRIATION OF TRADE SECRETS**

48. Transtar incorporates paragraphs 1 through 47 of the Complaint as if fully rewritten.

49. Transtar maintains trade secrets.

50. Those trade secrets are valuable in that they are not generally known to the competitors of Transtar or the public.

51. Transtar has taken reasonable efforts to maintain the secrecy of its trade secrets.

52. Youngker gained access to Transtar's trade secrets only through his confidential relationship with Transtar and pursuant to the requirement that he keep the information confidential.

53. Youngker has willfully and maliciously misappropriated Transtar's trade secrets and used them to his and WIT's business advantage.

54. WIT has willfully and maliciously misappropriated Transtar's trade secrets and used them to its business advantage.

55. As a result of Defendants' misappropriation, Transtar has suffered, and will continue to suffer, actual damages.

56. Defendants are therefore liable to Transtar under the uniform trades secrets act for Transtar's actual damages in excess of $75,000, exemplary damages, and reasonable attorneys' fees.

### COUNT II – TORTIOUS INTERFERENCE WITH ECONOMIC AND/OR BUSINESS RELATIONS

57. Transtar incorporates paragraphs 1 through 56 of the Complaint as if fully rewritten.

58. Transtar has economic and business relationships with its customers.

58. Defendants knew of Transtar's economic and business relationships.

59. Defendants intentionally and maliciously interfered with Transtar's economic and business relationships.

60. As a direct and proximate result of Defendants' intentional and malicious interference with the economic and business relationships between Transtar and its customers, Transtar has suffered damages in excess of $75,000.

61. As a consequence of Defendants' actions, which were malicious, reckless, wanton, willful and gross and were characterized by hatred, ill will, a spirit of revenge, or a conscious disregard for the rights of Transtar, Transtar is entitled to an award of punitive or exemplary damages and attorneys' fees.

### COUNT III – TORTIOUS INTERFERENCE WITH ECONOMIC AND/OR BUSINESS RELATION

62. Transtar incorporates paragraphs 1 through 61 of the Complaint as if fully rewritten.

63. Transtar had an economic and business relationship with Youngker

63. WIT knew of Transtar's economic and business relationship.

64. WIT intentionally and maliciously interfered with Transtar's economic and business relationship with Youngker.

65. As a direct and proximate result of WIT's intentional and malicious interference with the economic and business relationships between Transtar and Youngker, Transtar has suffered damages in excess of $75,000.

66. As a consequence of WIT's actions, which were malicious, reckless, wanton, willful and gross and were characterized by hatred, ill will, a spirit of revenge, or a conscious disregard for the rights of Transtar, Transtar is entitled to an award of punitive or exemplary damages and attorneys' fees.

### COUNT IV – BREACH OF THE DUTY OF LOYALTY

67. Transtar incorporates paragraphs 1 through 66 of the Complaint as if fully rewritten.

68. As an employee of Transtar, Youngker owed Transtar a duty of loyalty.

69. Such duty of loyalty requires an agent to act in the best interests of the principal and it prohibits an agent from misappropriating trade secrets and converting customers while still a party to the agency relationship.

70. As an employee of Transtar, Youngker had access to Transtar's confidential and valuable business information, including customer information and pricing.

71. Youngker used and disclosed Transtar's confidential business information, diverted Transtar's customers, and took Transtar's property without Transtar's knowledge or permission.

72. Youngker's conduct violated his duty of loyalty to Transtar and Transtar has suffered actual damages as a result of Youngker's misconduct in an amount that is believed to be in excess of $75,000.

73. Youngker's misconduct was intentional, malicious, and done with actual malice, and, therefore, Transtar is entitled to exemplary damages, as well as recovery of its attorney's fees.

## COUNT VI – CIVIL CONSPIRACY

74. Transtar incorporates paragraphs 1 through 73 of the Complaint as if fully rewritten.

75. Civil conspiracy prohibits the malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages.

76. Defendants maliciously conspired to injure Transtar by using Transtar's confidential information to solicit Transtar's customers and grow its business, of which could not occur in the absence of either Defendant.

77. As a result of Defendants' malicious conduct, Transtar suffered actual damages in an amount which is believed to be in excess of $75,000.00.

78. As a consequence of Defendants' actions, Transtar is entitled to recover all damages that arose as a direct result of Defendants' wrongful act in pursuance of the conspiracy, as well as punitive damages and attorney's fees.

## COUNT VII – INJUNCTIVE RELIEF

79. Transtar incorporates paragraphs 1 through 78 of the Complaint as if fully rewritten.

79. Defendants' conduct in misappropriating Transtar's trade secrets has caused, and continues to cause, real, certain, substantial and serious harm to Transtar.

80. Unless enjoined from continuing such conduct, Defendants' actions will cause irreparable injury to Transtar for which Transtar would have no adequate remedy at law.

81. An injunction is necessary to prevent any irreparable injury to Transtar and is necessary to prevent Defendants' otherwise inevitable disclosure and use of Transtar's trade secrets and, further, would be in the public's interest.

82. An injunction would cause no harm to Defendants.

83. Defendants should therefore be enjoined: from further misappropriation of Transtar's trade secrets; from disclosing Transtar's trade secrets; from using Transtar's trade secrets; and from interfering with Transtar's business and economic relationships with customers.

## COUNT VIII – VIOLATION OF FEDERAL DEFEND TRADE SECRETS ACT

84. Transtar incorporates paragraphs 1 through 83 of the Complaint as if fully rewritten.

11

85. Transtar maintained trade secrets.

86. Those trade secrets are valuable in that they are not generally known to the competitors of Transtar or the public.

87. Transtar has taken reasonable efforts to maintain the secrecy of its trade secrets.

88. Youngker gained access to Transtar's trade secrets only through his confidential relationship with Transtar and pursuant to the requirement that he keep the information confidential.

89. Youngker has willfully and maliciously misappropriated Transtar's trade secrets and used them to his and WIT's business advantage.

90. WIT has willfully and maliciously misappropriated Transtar's trade secrets and used them to its business advantage.

91. Youngker and WIT continue to willfully and maliciously misappropriate Transtar's trade secrets to its business advantage.

92. As a result of Defendants' misappropriation, Transtar has suffered, and will continue to suffer, actual damages.

93. Therefore, pursuant to 18 USCS § 1836, Transtar is entitled to actual damages, exemplary damages, reasonable attorney's fees, and injunctive relief.

WHEREFORE, Transtar demands judgment and relief against Defendants as follows:

1. Compensatory damages in an amount in excess of $75,000 to be proven at trial, and all other relief at law or equity, in order to fully compensate Transtar for its injuries caused by Defendants;

2. Punitive and/or exemplary damages;

3. Injunctive relief preventing Defendants from misappropriating, using, or disclosing Transtar's trade secrets or from interfering with Transtar's economic and/or business relations with customers;

4. Injunctive relief preventing Youngker from continuing to work for WIT due to his improper use of Transtar's trade secrets and other unlawful acts;

5. A Court order that Defendants not disclose Transtar's trade secrets to any person or entity, or use such trade secrets for the benefit of themselves or any other person or entity;

6. A Court order that Defendants return all of Transtar's trade secrets and other confidential business information taken by Youngker and used by Youngker in his employment with WIT;

7. Reasonable attorney's fees pursuant to State and common law;

8. Costs incurred in prosecuting this action; and

9. Any other appropriate relief that this Court deems just and equitable.

Respectfully submitted,

s/ Gregory C. Scheiderer
David A. Campbell (0066494)
Gregory C. Scheiderer (0087103)
Vorys, Sater, Seymour and Pease LLP
200 Public Square, Suite 1400
Cleveland, Ohio 44114
Phone: (216) 479-6100
Fax: (216) 479-6060
dacampbell@vorys.com
gcscheiderer@vorys.com

*Attorneys for Plaintiff
Transtar Industries, Inc.*

## **JURY DEMAND**

Plaintiff demands a trial by jury in this matter with the maximum number of jurors permitted by law.

s/ Gregory C. Scheiderer
*Counsel for Plaintiff Transtar Industries, Inc.*
